UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LEE JAMES,

                    Petitioner,                      Case Number 18-10972
                                                       Honorable David M. Lawson

v.

CATHERINE S. BAUMAN,

                    Respondent.

_____/

**OPINION AND ORDER DENYING AMENDED
PETITION FOR WRIT OF HABEAS CORPUS**

       Adrian Contreras was shot to death by masked intruders who broke into his Pontiac home

while he and the other occupants were asleep.  Petitioner Donald Lee James, a juvenile at the time

of the crime, was convicted as an adult by a jury in the Oakland County, Michigan circuit court of

first-degree felony murder and other offenses for his participation in the home invasion.  The trial

court sentenced James to a prison term of 40 to 60 years for the murder conviction and lesser terms

for his other convictions.  James unsuccessfully sought direct appeal and post-conviction state

court remedies.  He then filed the habeas corpus petition under 28 U.S.C. § 2254, which is now

before the Court.  He challenges the adequacy of the evidence, the validity of the sentencing

procedures applied to him as a juvenile, and the quality of his representation at trial and on appeal.

Because none of James's arguments warrant the issuance of a writ of habeas corpus, the Court will

deny the petition.

I.

The charges against James and his co-defendant, Jonathan Hickerson, stemmed from an October 22, 2012, nighttime home invasion of a residence in Pontiac, Michigan. The home was occupied by three adult brothers, one of the men's wife, and a young child. Two of the brothers immediately were awoken and grabbed firearms when the back door to the house was kicked in by two masked intruders. In the ensuing shootout, the third brother, Adrian Contreras, was shot to death. Hickerson was also shot, and he collapsed and was later captured in the yard outside the house.

The surviving occupants of the house testified to their eyewitness accounts of the incident. In addition, Anthony Herald testified that he, James, and Hickerson armed themselves and planned to rob the victims' house on the night of the incident. Herald testified that he was with the other two men in the car on their way to commit the robbery when he backed out and was driven home instead. Michael Mulholland and Rachel Thomas testified that James made statements to them immediately following the incident. James told them that he and Hickerson had gone to a house to commit a robbery, that Hickerson had been shot and was left behind, that James did not know what to do with his gun, and that another man had been shot inside the house.

The prosecution presented evidence that James called Hickerson's cell phone after the incident, which was found ringing by police near the victim's body. Also, a black ski mask similar to the ones worn by the perpetrators as described by the eyewitnesses was found by police a few hundred feet from the scene. Subsequent analysis showed that it contained James' DNA. Eyewitnesses testified that one of the perpetrators was driving a grey sedan away from the scene.

The state introduced evidence that James's aunt had rented a grey sedan, that James was in possession of the car at the time of the incident, and that he returned it to his aunt afterwards.

James's defense at trial was that the prosecutor presented no direct evidence that James was one of the two men who went inside the victims' house and that the prosecutor's witnesses were not credible. The jury rejected that defense and convicted James and Hickerson of murder.

An adult defendant convicted of first-degree felony murder is subject to a sentence of life in prison without the possibility of parole. Mich. Comp. Laws § 750.316. Because James was a juvenile when the felony murder was committed, the sentencing range would have been 60 years in prison as a maximum and a minimum sentence under the state's indeterminate sentencing scheme of 25 to 40 years, unless the prosecutor files a motion asking for a life-without-parole sentence. Mich. Comp. Laws § 765.25(9). The prosecutor did file such a motion, and the trial court denied it, imposing a prison sentence of 25 to 40 years.

James's convictions were affirmed on direct appeal, in which he raised the sole issue of the sufficiency of evidence. *People v. James*, No. 322890, 2016 WL 298970 (Mich. Ct. App. Jan. 21, 2016). The state supreme court denied leave to appeal. *People v. James*, 888 N.W.2d 63 (Mich. 2016) (table). James then filed a petition for a writ of habeas corpus in this Court and immediately moved to stay the case so he could return to state court to file a post-conviction motion. The case was stayed, and James's motion was denied by the trial court in a written opinion. The state appellate courts also denied relief.

James returned to this Court, moved to reopen the case, and filed an amended habeas petition. In the amended petition, James argues that (1) insufficient evidence was presented at trial to establish his identity as one of the perpetrators, (2) the trial court violated his rights under *Miller*

- 3 -

*v. Alabama*, 567 U.S. 460 (2012), by imposing the maximum possible non-life prison term allowable under Michigan law without balancing sentencing factors, (3) the trial court used the incorrect standard in deciding his motion for a directed verdict, (4) he was denied the effective assistance of trial counsel, and (5) he was denied the effective assistance of appellate counsel.  Am. Pet. at iv-v, ECF No. 15, PageID.143-44.

In his response, the warden argues that the arguments first presented in James's post-conviction motion were raised too late because they were not brought to the state court's attention by contemporaneous objection or on appeal, and therefore they are subject to the defense of procedural default.  The other claimed constitutional violation, he says, is meritless.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The trial court, however, addressed the merits of each of the arguments and did not rely on any procedural violation when denying relief.  In any event, the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

- 4 -

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."

- 5 -

*Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

James argues that the evidence presented at trial was not sufficient to prove beyond a reasonable doubt that he was one of the perpetrators.  He also argues that the trial court used the incorrect standard when it ruled on his motion for a directed verdict, concluding that the prosecutor made out "a prima facie case."  Those arguments overlap and present the same issue for review. *United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (holding that "[a]n argument regarding the [trial] court's failure to direct a verdict of acquittal . . . is construed as an attack on the sufficiency of the evidence").

The Michigan Court of Appeals rejected James's claim on direct appeal.  It reviewed the evidence presented, dismissed James's contentions that some of the witnesses were not credible because that determination properly was for the jury, pointed out the physical evidence that corroborated witness testimony on James's participation in the home entry, and observed that DNA markers linked James to evidence found at the scene.  The court concluded that when viewed in the light most favorable to the prosecution, the evidence was sufficient to prove that James participated in the crimes. *James*, 2016 WL 298970, at *1-2.

That holding faithfully tracks federal law.  It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably

- 6 -

support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, any murder committed during the perpetration of certain felonies is first-degree murder. Mich. Comp. Laws § 750.316(1)(b). The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute, such as

home invasion. *See Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130, 136 (1999)). Additionally, as with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443, 449 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78, 81 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002), and intent or state of mind, *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 34 (1997).

The evidence that James was one of the two men who broke into the victims' house and engaged in the shoot-out that resulted in the death of Adrian Contreras came from multiple witnesses. First, Anthony Herald testified that he was with James and Hickerson when they formulated the plan to rob the victims' house. He described how on the night of the incident, the three discussed the target house, how they drove around in the grey sedan James's aunt had rented for him, and how the plan included the use of black ski masks and firearms. Herald backed out at the last minute, leaving James and Hickerson to carry out the plan themselves. Corroborating Herald's testimony was the fact that Hickerson was shot, incapacitated, and caught at the scene. The surviving adult victims testified that they encountered two masked and armed intruders at their home that same night. Finally, a black ski mask found near the scene contained James' DNA, and a grey sedan was seen fleeing the scene of the crime.

- 8 -

Herald's testimony, when taken together with the corroborating eyewitness descriptions and the DNA evidence, provided sufficient circumstantial evidence that James was the man who fled the scene after he committed the crimes with Hickerson.  James attacks Herald's credibility in various ways and suggests an innocent explanation for the DNA evidence, but such arguments do not diminish the constitutional sufficiency of the evidence.  A federal habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews*, 319 F.3d at 788 (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

Further buttressing the prosecutor's case was the testimony of Michael Muholland and Rachel Thomas about statements James made to them when he arrived at their house after the incident.  Mulholland testified that James told him that Hickerson had been shot, that he "ran out of shells," and he did not know what to do with his gun.  Thomas testified that James later admitted to participating in a robbery, telling her that "[w]e f**ked up," that Hickerson had been shot, and that he threw a gun into a lake.

The Michigan Court of Appeals did make one error: it erroneously stated that a "weapon" had been found near the scene containing James's DNA. *James*, at *3.  In fact, that was a mistaken reference to the ski mask.  But that does not render the evidence presented at trial constitutionally insufficient.  Nor does it render the state court decision unreasonable. *See*, *e.g.*, *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).

- 9 -

Because the testimony presented at trial provided the jury with a sufficient basis to find beyond a reasonable doubt that James was one of the two men who committed the crime, James is not entitled to relief on his first and third claims under § 2254(d)(1).

B.

James next argues that his 40-to-60-year sentence for murder violates *Miller v. Alabama* because the trial court imposed the maximum allowable non-life sentence under Michigan law without balancing sentencing factors to determine if a lesser sentence was warranted.  James raised this claim for the first time in his post-conviction motion.

In *Miller*, the Supreme Court held that the Eighth Amendment prohibits a sentence of mandatory life in prison without possibility of parole for juvenile offenders.  567 U.S. at 479.  The Court based that holding on its earlier cases that recognized that "children are constitutionally different from adults for sentencing purposes." *Id*. at 471.  The Court highlighted children's "'lack of maturity,'" "'underdeveloped sense of responsibility,'" "'vulnerab[ity] . . . to negative influences and outside pressures,'" and acknowledged that they "lack the ability to extricate themselves from horrific, crime-producing settings." *Ibid*. (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (holding that a person under age 18 at the time of the crime may not be executed)).  Mandating a life sentence for a juvenile, the Court believed was cruel "because a child's character is not as 'well formed' as an adult's, his traits are 'less fixed' and his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Ibid*. (quoting *Roper*, 543 U.S. at 570).  The Court held that, before sentencing a person who was a juvenile at the time of the offense to life imprisonment without parole, the sentencing court must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

- 10 -

James was sentenced on July 16, 2014, two years after *Miller* was decided.  At the time of James's sentencing, Michigan Compiled Laws § 769.25 had just become effective and provided Michigan sentencing courts with a procedure that complied with *Miller* to follow in cases where the prosecutor sought a non-parolable life sentence for a juvenile offender.  The statute also created a sentencing scheme for cases where the prosecutor chose to seek less than a non-parolable life sentence.  In such cases, a trial court must sentence a juvenile offender convicted of first-degree murder "to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years."  Mich. Comp. Laws § 769.25(9).

James was sentenced to the longest possible minimum term under this section: 40 years. But despite the trial court's failure to address all the *Miller* factors (chronological age, immaturity, family and home environment, circumstances of the homicide, possibility of a lesser charge, prospects for rehabilitation), it found that "a sentencing court is not required 'to specifically make findings as to the *Miller* factors except in the context of a decision whether to impose life without parole.'"  ECF No. 20-15, PageID.820.  The court asserted, though, that it nevertheless "fully weighed the *Miller* factors" when it decided *not* to impose a non-parolable life sentence. *Id.*, PageID.821.

The state court's decision did not contravene any Supreme Court precedent.  A decision is "contrary to" Supreme Court precedent only if "'the state court applies a rule different from the governing law set forth in' the Supreme Court's decision, 'or if it decides a case differently than [the] Court has done on a set of materially indistinguishable facts.'"  *Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  The Sixth Circuit

determined that the right recognized in *Miller* concerns only non-parolable life sentences for juvenile offenders and that "*Miller's* holding simply does not cover a lengthy term of imprisonment that falls short of life without parole." 945 F.3d 478. James's sentence made him eligible for parole after 40 years. *Miller* addressed sentences of life in prison with no possibility of parole. The state court's decision therefore was not contrary to *Miller*.

Nor did the state court unreasonably apply *Miller*. The Supreme Court did not hold in *Miller* or any other case that the Eighth Amendment prohibits a juvenile from receiving a sentence that leaves him eligible for parole only very late in life or that makes his release on parole unlikely but not impossible. *See Starks v. Easterling*, 659 F. App'x 277, 280-81 (6th Cir. 2015) ("The Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life [without parole]."); *Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012) (holding that *Miller* and its progeny do not apply to consecutive, fixed-term sentences for multiple nonhomicide offenses that may result in the functional equivalent of life without parole). In fact, the Supreme Court found in *Miller* that a "lifetime prison term with the possibility of parole" was a constitutionally acceptable alternative to a non-parolable life sentence. *Miller*, 567 U.S. at 489. Applying *Miller* here as James urges would require an extension of Supreme Court precedent. *Atkins*, 945 F.3d at 479. A state court cannot have unreasonably applied clearly established federal precedent where a habeas petitioner requires a federal court "to extend that precedent" to obtain relief. *Ibid.* (quoting *White v. Woodall*, 572 U.S. 415, 426 (2014)).

James's sentencing claim must be denied because he cannot show the state court's rejection of it was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).

- 12 -

C.

James also contends that he was denied his right to the effective assistance of trial and appellate counsel.  Trial counsel, he says, failed to seek an independent psychological evaluation for use at sentencing; did not ensure the trial court used the proper standard for deciding his motion for directed verdict; and failed to conduct an adequate pretrial investigation by interviewing Rachel Thomas's son, requesting independent DNA testing on the ski mask, and obtaining a DNA sample from Anthony Herald.

These issues were raised first in James's post-conviction motion.  The trial court rejected the claims on the merits in a written opinion.  It found that his lawyer actually stipulated to the appointment of a psychologist who examined James before sentencing, and there was no evidence of a brain impairment that warranted another mental health professional's involvement.  It concluded that there was no prejudice in its own misstatement of the applicable law governing the directed verdict motion because the proper standard was applied to James's sufficiency-of-evidence challenge.  And it concluded that no prejudice could be shown that flowed from the allegedly deficient pretrial investigation because James did not offer any information about what the witness interview or additional DNA testing would have disclosed.  *People v. James*, Op. Denying Post-Conviction Mot, ECF No. 20-15, PageID.824-26.

The trial court decision did not contravene or unreasonably apply governing federal law. It is true that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  And when counsel is ineffective, that right is abridged.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

- 13 -

However, an ineffective assistance of counsel claim has two components that a habeas petitioner must satisfy. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly

- 14 -

deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The state court properly applied the *Strickland* standard when it rejected James's argument that his trial attorney failed to seek an independent psychological evaluation for use at sentencing. Although James asked for an evidentiary hearing on this claim, he did not provide the state court with any evidence suggesting what an independent psychological evaluation would have accomplished. The post-conviction motion devoted only three sentences to the allegation, the last of which acknowledged that the evaluation ordered by the court in advance of sentencing benefited James because it "clearly influenced the trial court in the imposition of the [non-life] sentence for the felony-murder conviction." ECF No. 20-12, PageID.771.

Although "[i]t can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, . . . that formulation is sufficiently general that state courts would have wide latitude in applying it." *Harrington*, 562 U.S. at 106. The trial court did not unreasonably apply the *Strickland* standard when it rejected this allegation because James never explained how an expert would have benefited him at sentencing. He also did not show that counsel's agreement to use the state expert's report — which was helpful to him — amounted to deficient performance.

- 15 -

Counsel's failure to insist that the trial court apply the correct standard to the directed verdict motion may have been an oversight, but the trial court correctly found that no prejudice resulted. As discussed earlier, the prosecution presented sufficient evidence at trial during its case-in-chief to sustain James's convictions. Objecting to the trial court's incorrect articulation of the standard for deciding the motion for directed verdict would have been futile, as the motion would nevertheless have been denied. The motion properly was denied. No prejudice ensued. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

James's contention that trial counsel failed to conduct an adequate pretrial investigation suffers from the same flaw as his argument about the psychological expert: he has not offered any evidence of what an interview of Rachel Thomas's son would have shown, what independent DNA testing of the ski mask would have revealed, or how obtaining a DNA sample from Anthony Herald would have helped his case. The trial court's rejection of these claims on this basis reasonably applied governing federal law. Counsel is presumed to act within prevailing professional norms, and the "absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U. S. 12, 23 (2013). Underdeveloped, conclusory allegations of ineffective assistance of counsel such as this may be summarily rejected by a reviewing court consistent with the *Strickland* standard. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021).

James also faults his appellate lawyer for failing to raise his post-conviction claims on direct appeal because "there was no downside to presenting these claims." ECF No. 20-12, PageID.772. But because James's underlying "claim[s] . . . lack[] merit, his appellate counsel's

- 16 -

failure to raise [them] on direct appeal cannot be deemed constitutionally deficient performance."
*Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

III.

None of James's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 4, 2022